## PETERS *v.* QUEEN INSURANCE COMPANY.

1. Under the Civil Code (1910), § 2563, a non-resident insurance company may be sued in the county where the company had an agent and place of doing business when the contract of insurance was made and the cause of action arose, although the company has abandoned its agency in that county and has no agent there at the time of the suit.
2. Where in such a case the company has no agent or place of doing business in the county, service of suit may be perfected, under the Civil Code (1910), § 2564, by leaving a copy of the original suit and process at the place where was located the agent and place of doing business of the company continuously from the time of the execution of the contract to the time of the company's discontinuance of the agency in that county.
3. No constitutional question is propounded to this court by the Court of Appeals, and therefore no question as to the constitutionality of any act of the legislature is passed upon.

JANUARY 12, 1912.

The Court of Appeals certified to the Supreme Court the following question of law: "On October 30, 1909, a petition was filed in the city court of Moultrie, against a non-resident insurance company, because of a loss which had been occasioned to the plaintiff, who was insured under one of its policies. The petition alleged that at the time the contract of insurance was made (October 29, 1908), and at the time the cause of action sued on arose (December 8, 1908), the defendant had an agent and an agency in Moultrie in Colquitt county. Process was issued in usual form, directed to the sheriff of the city court of Moultrie. The sheriff made the following return of service: 'I have this day served the within papers by leaving a copy of the same at the place where was located the agency or place of doing business of said defendant company continuously from January 1st, 1906, to December 14th, 1908, said defendant company now having no agent or place of doing business in said county, the agency or place of doing business of said company at said time (January 1st, 1906, to Dec. 14, 1908) being located in the 2nd story of the building known as the Moultrie Banking Company building, corner of North Broad and West Broad streets, Moultrie, Georgia, that being the place where said copy was by me so left as above stated. W. W. Boyd, Sheriff, City Court of Moultrie.' At the return term of the court the defendant specially appeared and moved to dismiss the action, for lack of jurisdiction as to either the case or the defendant, because it is

not disclosed by the petition that at the time of the filing of the suit the defendant company had any agent or agency in the city of Moultrie or in the county of Colquitt; also, because it appears from the return of the sheriff that the defendant company had no agent or agency or place of doing business in said city or in said county at the date the alleged service was made, or at any other date subsequent to Dec. 14, 1908. Was the action subject to dismissal because of the facts set forth in the grounds of the motion?"

*J. A. Wilkes* and *Shipp & Kline,* for plaintiff.

*King & Spalding & Underwood,* for defendant.

BECK, J. The act of 1861, providing for the situs of suits against insurance companies, and the service of process in suits brought thereunder, is codified in the Code of 1873, as follows: "§ 3408. Whenever any person may have any claim or demand upon any insurance company having agencies, or more than one place of doing business, it shall be lawful for such person or persons to institute suit against said insurance company within the county where the principal office of such company is located, or in any county where said insurance company may have an agency, or place of doing business was located at the time the cause of action accrued, or the contract was made, out of which said cause of action arose." Section 3409 declared: "In all such suits, service shall be effected upon such insurance company by leaving a copy of the bill or writ with the agent of the company, if any; if no agent should be in the county, then at the agency or place of doing business, or where the same was located at the time such cause of action accrued, or the contract was made, out of which the same arose." These sections were construed in *Empire State Insurance Company* v. *Collins,* 54 *Ga.* 376, wherein it was held, that, "under sections 3408-3409 of the code, an action against an insurance company must be instituted in the county where its principal office is located, or where it has an agency or place of doing business when suit is brought, and which agency or place of business was located in the county at the time the cause of action accrued, or the contract was made, out of which the cause of action arose." This case was decided at the January term, 1875. Subsequently section 3408 was amended by inserting between the word "business"

and the word "was" the following: "or in any county where such agency or place of doing business" (Acts 1878-9, p. 54), so that the section as amended would read as follows: "Whenever any person may have any claim or demand upon any insurance company having agencies, or more than one place of doing business, it shall be lawful for such person or persons to institute suit against said insurance company within the county where the principal office of such company is located, or in any county where said insurance company may have an agency, or place of doing business, or in any county where such agency or place of doing business was located at the time the cause of action accrued, or the contract was made, out of which said cause of action arose." This amendment wrought a change in the original act. In the *Collins* case the latter part of the section was construed in conjunction with the former, so that in order to locate the venue of the suit there must have been an agency or place of doing business at the time the suit was brought, and this agency or place of doing business must have been located in such county at the time of the accrual of the cause of action or the making of the contract. By the amendment suits against an insurance company having an agency or more than one place of doing business may be located, (1) in counties where the principal office of such company is located, or (2) in any county where the company may have an agency or place of doing business, or (3) in any county where such agency or place of doing business was located at the time the cause of action accrued, or (4) in any county where such company had an agency or place of doing business at the time when the contract was made, out of which the cause of action arose. Though this act was in existence at the time the case of *Atlanta Home Insurance Company* v. *Tullis,* 99 *Ga.* 225 (25 S. E. 401), was decided, no reference was made to it in the decision, and the court followed the ruling pronounced in the *Collins* case. Inasmuch as no reference was made to the amending act of 1879, this decision is not to be accepted as a construction of that act. Except as amended by the act of 1902 (Acts 1902, p. 53), substituting the word "agent" for "agency," sections 3408-3409 of the Code of 1873, as amended by the act of 1879, are codified in the present Civil Code, §§ 2563-2564, with some immaterial verbal changes.

No constitutional infirmity is raised in the record as to that part

of the act which allows a suit to be located in a county where the contract was written, or cause of action accrued, without respect to the company's having an agent or place of doing business there at the time the suit is instituted, nor is any constitutional objection urged against the provision that if no agent should be in the county, the process in the suit brought under this section may be served where the agent or place of doing business was located at the time the cause of action accrued, or the contract was made, out of which the same arose. This court is committed by numerous precedents to the proposition that a constitutional question must be made in the court below, before this court will undertake to pass upon it. Whatever may have been done sometimes in particular cases, or whatever may be the practice in courts of error in some other jurisdictions, this is the rule laid down by the decisions of this court. *Sanders Mfg. Co.* v. *Dollar Savings Bank,* 110 *Ga.* 559 (3), 563 (35 S. E. 777); *Roberts* v. *Keeler,* 111 *Ga.* 185 (36 S. E. 617); *Laffitte* v. *Burke,* 113 *Ga.* 1001 (39 S. E. 433); *Sayer* v. *Brown,* 119 *Ga.* 539 (3), 542 (46 S. E. 649); *Newkirk* v. *Southern Ry. Co.,* 120 *Ga.* 1048 (48 S. E. 426); *Carswell* v. *Wright,* 133 *Ga.* 714 (4), 718 (66 S. E. 905; *Cooper* v. *National Fertilizer Co.,* 132 *Ga.* 529 (64 S. E. 650), and many others. Indeed, Civil Code (1910), § 6203, declares that "The Supreme Court shall not decide any question unless it is made by a special assignment of error in the bill of exceptions," etc. Unless we hold this section of the code unconstitutional, it is conclusive of the question. At any rate, it indicates a concurrence between the legislative and judicial views on this question. Thus by repeated decisions of this court the rule is firmly fixed as to cases coming before us upon writs of error.

Is the case different as to questions certified to the Supreme Court by the Court of Appeals? In the amendment to the constitution, establishing the Court of Appeals and declaring its jurisdiction and practice, a rule is prescribed as to this matter. Civil Code (1910), § 6505 (codifying a portion of this amendment), contains the following provisions on the subject of the certification of questions by the Court of Appeals to this court: "Where, in a case pending in the Court of Appeals, a question is raised as to the construction of a provision of the constitution of this State or of the United States, or as to the constitutionality

of an act of the General Assembly of this State, and a decision of the question is necessary to the determination of the case, the Court of Appeals shall so certify to the Supreme Court; and thereupon a transcript of the record shall be transmitted to the Supreme Court, which, after having afforded to the parties an opportunity to be heard thereon, shall· instruct the Court of Appeals on the question so certified, and the Court of Appeals shall be bound by the instruction so given. . . The Court of Appeals may at any time certify to the Supreme Court any other question of law concerning which it desires the instruction of the Supreme Court for proper decision; and thereupon the Supreme Court shall give its instruction on the question certified to it, which shall. be binding on the Court of Appeals in such case." It will be seen that by this amendment to the constitution provision was made for the Court of Appeals to certify to this court two classes of questions: (1) constitutional questions; (2) any other questions on which they may desire instruction. As to constitutional questions, it specifies a question raised in a case in the Court of Appeals, and which is necessary for the decision of the case there, and provides that that court shall so certify to ·this court. The " other " questions mentioned evidently referred to questions other than such constitutional questions, for which special provision had been made. To hold that, on a general question of the Court of Appeals making no reference to any constitutional question, this court would search the constitution to determine whether any conflict between it and the act of the legislature under consideration could be found, would, we think, conflict with the whole spirit of our own decisions as well as with the manifest intention of the constitution itself.

As the record does not disclose any constitutional attack made upon these code sections, and as the Court of Appeals has asked no instruction on that subject, we can not interpret them to mean anything other than what is clearly expressed. We therefore answer the question propounded by the Court of Appeals in the negative.

EVANS, P. J., dissenting. I agree with my associates as to the construction to be given to the statute fixing the venue of suits against insurance companies and providing for the service of process of suits brought under the statute. But I can not concur with

them, that, in answer to a question of law from the Court of Appeals, the law is as it is written in a statute, however it may palpably collide with the constitution of the State, must control the case in the absence of a direct attack on the statute made in the bill of exceptions to the Court of Appeals. It was written in the first constitution of Georgia, and repeated in all subsequent ones, that it is the duty of the courts to declare void all legislative enactments which contravene the constitution. Obediently to this mandate, the Supreme Court in its early history adjudicated the constitutionality of statutes without so much as a reference of antagonism between the act and the constitution being contained in bills of exceptions. Later on the practice grew up to allege in the assignments of error that the act was unconstitutional, without stating the particular clause of the constitution which the act was alleged to offend. Finally the practice culminated into a rule of procedure that the Supreme Court would not decide a constitutional point unless the point was passed on by the trial court, and in raising the point the particular constitutional provision alleged to have been violated by the act was specifically indicated. The rationale of this rule is, as I apprehend it, that the Supreme Court was established to review errors of law committed in the trial court; and unless the conflict of a statute and the constitution is urged in the trial court, and the ruling duly excepted to, this court will not undertake to pass upon a question not made in the trial court. Whether I am right or wrong in my analysis of the basal support of the rule, I am fully persuaded that neither the formula of its pronouncement nor the spirit of its essence requires its application to certified questions of law from the Court of Appeals. The constitution was amended about seven years ago by the establishment of the Court of Appeals, which court was given exclusive jurisdiction within a limited sphere. In order to avoid conflict of decisions, it was provided that the Court of Appeals was bound by the precedents of the Supreme Court. It was further provided that the Court of Appeals should not pass on the constitutionality of any statute, but, if a statute was attacked as unconstitutional and exception was taken to the ruling of the trial court thereon, that the Court of Appeals should certify such constitutional question to the Supreme Court for decision. It was further provided that the Court of Appeals might certify any

question of law to the Supreme Court, and must follow the law as enunciated by the Supreme Court in answer to the question. In determining the question of law certified by the Court of Appeals, this court is not reviewing the judgment either of the Court of Appeals or of the trial court; it is simply deciding the law question submitted to it by the Court of Appeals. If the law question is submitted in a concrete form, and its solution involves the consideration of two statutes apparently conflicting, it is our duty to decide on the operation of each. The question can not be answered without doing this. If subsequently to the passage of the statute under consideration the General Assembly had passed an act declaring that all insurance companies having agents in this State must be sued in a county where an agency is located, would it not be our duty to pass upon the repugnancy of such a statute to the one sub judice, and decide which one is to control? If a statute be in opposition to the constitution, and if both the statute and the constitution apply to the particular case, so that the court must either decide the case according to the constitution or according to the statute, which is to control? If the courts are to regard the constitution as superior to the statute, where both apply, then the constitution must control the case. So I conclude that when the Court of Appeals inquires of this court the legal effect of certain facts, and a statute in opposition to the constitution and the constitution both apply to the facts, and either the statute or the constitution must control the decision, then it is the duty of this court to reject the statute and give full force and effect to the constitution.

The constitution requires that a defendant must be sued in the county of his residence. An insurance company may not necessarily be a corporation; but whether such company is a partnership or a corporation, it can be sued only in the county of its residence, if a judgment in personam is sought. It is competent for the General Assembly to enact that an insurance corporation of its own creation may be located for purposes of suit as a resident of each county where it has an agent or agency. But it would not be competent for the legislature to override the constitution and enact that a domestic insurance company is suable in a county where it had neither agent nor place of doing business at the time of the suit. All citizens of the United States, including corporations, are

guaranteed the equal protection of the laws, and where foreign and domestic corporations are doing business in this State by means of agents, the law providing for the situs of suits where in personam judgments are sought must apply to both alike.    Furthermore, that provision of the code section which provides for service of process on a former place of business in a suit instituted in a county where the defendant has neither agent nor place of business clashes with the due-process clause of our constitution.    I will not undertake to elaborate upon the unconstitutional feature of the statute, because that point is not reached in the difference between my brethren and myself.    I am firmly of the opinion that the answer to the question of the Court of Appeals should be that the case in the city court of Moultrie should be dismissed.

*All the Justices concur, except Evans, P. J., dissenting, and Hill, J., not presiding.*